IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TYRONE STAFFORD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:18-CV-723-RP |
| | § | |
| BRIAN MANLEY and | § | |
| OFFICER NEEL #7806, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court is Defendant Officer Michael Neel's ("Neel") motion to dismiss, (Dkt. 18), and responsive briefing. Having considered the parties' submissions, the record, and applicable law, the Court will deny the motion.

**I. BACKGROUND**

Plaintiff Tyrone Stafford ("Stafford") brings this suit against Neel, a police officer employed by the Austin Police Department, under 42 U.S.C. § 1983 for violations of his constitutional rights. Stafford alleges that in September 2016, at 3:00 a.m., he pulled up to a red light at the intersection of MLK and Chicon on his way home. (Pl. Supp., Dkt. 6, at 1). Neel was stopped at the light. (*Id.*). According to Stafford, the intersection was on route from "the downtown district of Austin" where "there were several cars of Black people going the same route they usually take from leaving after the club," and there were "cars with amplified music and rims everywhere." (Resp., Dkt. 19, at 2). Stafford alleges that when he pulled up to the red light, he "looked at Officer Neel," Neel looked back, and when the light turned green, Neel pulled him over. (*Id.*). Stafford claims Neel pulled him over merely because he had looked at him; Neel claims he pulled Stafford over because his music was too loud. (*Id.*; Mot., Dkt. 18, at 5–6). Stafford alleges that the traffic stop by Neel violated his constitutional rights. (Compl., Dkt. 1, at 8; Pl. Supp., Dkt. 6, at 1). Neel has moved to dismiss

1

Stafford's claims against him under Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). (Mot., Dkt. 18).

## II. DISCUSSION

### A. Rule 12(b)(5) Motion

A motion to dismiss pursuant to Rule 12(b)(5) turns on the legal sufficiency of the service of process. *Quinn v. Miller*, 470 F. App'x 321, 323 (5th Cir. 2012). The serving party has the burden of demonstrating the validity of the service. *Id.* (citing *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992)). If the serving party fails to meet its burden, the district court may quash the service and dismiss without prejudice all claims against the improperly served defendant. *See Gartin v. Par Pharm. Companies, Inc.*, 289 F. App'x 688, 691 (5th Cir. 2008).

Stafford is proceeding *pro se* in this case. On November 28, 2018, the Court ordered the Clerk of Court to reissue summons to Neel and directed the United States Marshals to serve him. (Dkt. 14). The Marshals attempted to served Neel by certified mail by delivering the summons to an individual identified as "Jimmy Petto (SP) Agent" on December 4. (Dkt. 17). Neel's counsel argues that "[c]ertified mail requires the signature of the Defendant to effectuate proper service," (Reply, Dkt. 23, at 1), and service was never completed because Neel did not sign the return receipt for the summons; Petto did. (Mot., Dkt. 18, at 2–3). She is incorrect.

Rule 4(e) of the Federal Rules of Civil Procedure permits service upon an individual within a district of the United States by "delivering a copy of [the summons and complaint] to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2)(C). Petto appears to be an agent authorized to receive service of process for Neel—he is designated as an "SP Agent." (Return Receipt, Dkt. 17, at 1). Neel's counsel ignores this fact. Instead, she confusingly argues that "[t]he certified mail letters were received by an 'unknown agent' at the Austin Police Department, presumably the person in charge of checking the mail on December 4, 2018. The

return receipt was signed by Jimmy Petto, not Officer Neel—the named Defendant, as is required under Texas Rule of Civil Procedure 107(c)." (Mot., Dkt. 18, at 3). It is unclear why the signor is described as an "unknown agent," since the return receipt is clearly signed by Petto. (*See* Return Recipt, Dkt. 17). And Neel's counsel neglects to mention that Petto is designated as an "SP Agent." (*Id.* at 1).

Moreover, the single case on which Neel's counsel relies for her argument that only Neel could sign the return receipt announces no such requirement; rather, it directly contradicts it. In *Ayika v. Sutton*, 378 F. App'x 432 (5th Cir. 2010), the Fifth Circuit upheld a district court's dismissal of a complaint without prejudice for lack of service of process. The court explained that service must comply with Federal Rule of Civil Procedure 4(e). *Id.* at 433. That rule provides four independent means of completing service:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; **or**
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; **or**
>> (C) **delivering a copy of each to an agent authorized by appointment or by law to receive service of process**.

Fed. R. Civ. P. 4(e) (emphasis added). The *Ayika* court concluded that because "Ayika did not serve process using any of the methods established in Rule 4(e)(2)," his attempted service needed to comply with Texas state law. 378 F. App'x at 434. Only then did the court assess whether Ayika's attempted service complied with Texas Rule of Civil Procedure 107. *See id.* And when it did so, the court recognized that Rule 107 requires that a return receipt bear the "addressee's signature"—not the signature of the "named [d]efendant," as Neel's counsel argues. *Id.* (citing Tex. R. Civ. P. 107); (Mot., Dkt. 18, at 3).

3

Neel's counsel has thus ignored key facts surrounding the U.S. Marshals' attempted service of process and misstated the Fifth Circuit's analysis and holding in *Ayika*. At the same time, the return receipt filed by Stafford strongly suggests that Neel was properly served through an authorized agent for service of process. Accordingly, the Court finds that Stafford has met his burden to demonstrate sufficient service of process on Neel. The Court will therefore deny Neel's 12(b)(5) motion.

**B. Rule 12(b)(6) Motion**

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and

4

matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

Neel argues that he is shielded from liability for his actions by qualified immunity. (Mot., Dkt. 18, at 6). "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). There are two steps to determining whether a defendant is protected by qualified immunity. *Saucier v. Katz*, 533 U.S. 194 (2001). First, the court asks whether the official "violated a statutory or constitutional right." *Morgan*, 659 F.3d at 371 (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)). Second, the court asks whether "the right was 'clearly established' at the time of the challenged conduct." *Id.* (quoting *al-Kidd*, 131 S. Ct. at 2083). A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). While there need not be "a case directly on point . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *al–Kidd,* 563 U.S. at 741).

When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th

Cir. 2002). In order to shift the burden to the plaintiff, "[t]he defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority." *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992). Fifth Circuit precedent suggests that a defendant can invoke qualified immunity by pleading good faith and scope-of-authority in substance. *See Saenz v. Flores*, 668 F. App'x 611, 612 (5th Cir. 2016) (finding that the defendant had invoked qualified immunity by stating that he was acting in the scope of his employment, that he was in a "position of interdependence," and that he was entitled to qualified immunity). Here, Neel asserts that he is entitled to qualified immunity "based on the performance of discretionary functions" and that he performed these functions while "wearing an Austin Police Department-issued uniform." (Mot., Dkt. 18, at 6–7). These assertions are sufficient to shift the burden to Stafford to identify plausible allegations demonstrating that Neel's conduct (1) violated a constitutional right and (2) that right was clearly established at the time of the conduct. *Lincoln v. Turner*, 874 F.3d 833, 847–48 (5th Cir. 2017).

Courts have the discretion to decide the order in which to answer these two prongs of qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In doing so in the context of a pretrial motion, the Court must determine whether the official is entitled to qualified immunity in light of the applicable standard of review. *Tolan v. Cotton*, 134 S. Ct. 1861, 1868 (2014); *McClendon*, 305 F.3d at 323. At the motion to dismiss stage, this means that the Court must evaluate the defendant's qualified immunity claim based on his conduct "as alleged in the complaint." *McClendon*, 305 F.3d at 323.

<u>1. Whether Neel's Conduct Violated a Constitutional Right</u>

The Court will first determine whether Neel's conduct violated Stafford's constitutional rights. Stafford alleges that Neel pulled him over solely because he had looked at him, in violation of

6

his Fourth Amendment rights. (Compl., Dkt. 1, at 4, 9; Pl. Supp., Dkt. 6, at 1).[1] The Court construes this claim as one for a stop without reasonable suspicion. (*See* R. & R., Dkt. 7, at 4).

"The Fourth Amendment provides that 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'" *Terry v. Ohio*, 392 U.S. 1, 8 (1968) (citing U.S. CONST. amend. IV). "Warrantless searches and seizures are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions. The rule of *Terry v. Ohio* . . . represents a very narrow exception." *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014) (internal quotation marks and citations omitted). "Pursuant to *Terry* . . . police officers may stop and briefly detain"—that is, "seize"—"an individual for investigative purposes if they have reasonable suspicion to believe that criminal activity is afoot." *Goodson v. City of Corpus Christie*, 202 F.3d 730, 736 (5th Cir. 2000). A law enforcement officer lacks the requisite reasonable suspicion to briefly seize a person unless he "can point to specific and articulable facts that lead him to reasonably suspect that" the person "is committing, or is about to commit, a crime." *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014) (citing *United States v. Jordan*, 232 F.3d 447, 448 (5th Cir. 2000)). "In determining whether the officer's suspicion, as based on specific and articulable facts, was reasonable, the totality of the circumstances must be considered." *Id.* (citing *United States v. Arvizu,* 534 U.S. 266, 273–74 (2002)).

Stafford alleges that Neel stopped him because Stafford had looked at Neel at a traffic light. (Compl., Dkt. 1, at 9; Pl. Supp., Dkt. 6, at 1). Neel's counsel argues that "Plaintiff's pleadings establish that Officer Neel acted within the bounds of the Fourth Amendment by conducting a *Terry* stop for loud music at three in the morning." (Mot., Dkt. 18, at 7). She refers to a video Stafford

---

[1] In his "more definitive statement" supplementing his complaint, Stafford also alleges, "I was unlawfully restrained when I was placed in handcuffs, I was kidnap[ped] when the officers took me out of my car. Officers tried to pull me in different directions to make my body move in such a way that it could be called resisting arrest." (Pl. Supp., Dkt. 6, at 1). These allegations do not appear in Stafford's complaint, and the Court does not construe his more definitive statement as an amended complaint. Accordingly, the Court construes Stafford's complaint as challenging only the decision to pull him over. Stafford would need to amend his complaint if he wishes to pursue further claims.

7

incorporated into his complaint showing his interactions with Neel and another police officer after being pulled over. (*See id.* at 5–6; Video, Dkt. 18-1).[2] She characterizes the video as "showing Plaintiff acknowledging that he was stopped for loud music in his car." (Mot., Dkt. 18, at 5–6 (citing Video, Dkt. 18-1, at 9:37)). What the video shows is Stafford questioning someone off camera about why he was pulled over and responding, "Music too loud? That's a goddamn lie." (Video, Dkt. 18-1, at 9:37). At the very least, the video therefore shows that there is a factual dispute as to why Neel pulled Stafford over. At the motion to dismiss stage, however, the Court must credit Stafford's factual allegations as true. *Twombly*, 550 U.S. at 570.

Standing alone, it is unreasonable for an officer to suspect that an individual is committing or about to commit a crime merely because the individual makes eye contact with the officer. *See United States v. Moreno-Chaparro*, 180 F.3d 629, 632 (5th Cir. 1998) ("[W]e are persuaded in the ordinary case, [that] whether a driver looks at an officer or fails to look at an officer, taken alone or in combination with other factors, should be accorded little weight."); *United States v. De Jesus Chavez-Chavez*, 205 F.3d 145, 149 (5th Cir. 2000) ("Whether a driver looks at an officer or not should not be accorded much weight."); *United States v. Rangel-Portillo*, 586 F.3d 376, 381 (5th Cir. 2009) ("[T]he driver's eye contact with the officer bears little to no weight on this Court's reasonable suspicion determination."). Nevertheless, the Court must consider the "totality of the circumstances" of the *Terry* stop in determining whether, as a matter of law, Neel reasonably suspected that Stafford was engaging in or about to engage in criminal activity based on Stafford's eye contact with him. *Hill*, 752 F.3d at 1033.

In his motion, Neel points to several circumstances allegedly giving rise to a reasonable suspicion of criminal activity. None are persuasive. First, Neel states that he stopped Stafford at 3:00

---

[2] The video has been posted on YouTube and is available at https://www.youtube.com/watch?v=YmMHgf30GU8. Stafford references this video in his complaint, and the Court has deemed it incorporated by reference into the complaint. (R & R., Dkt. 7, at 3). Neel has also submitted a CD-ROM copy of the video as an exhibit to his motion to dismiss. (Video, Dkt. 18-1). The Court refers to the time stamps in Neel's copy of the video in this order.

8

in the morning. (Mot., Dkt. 18, at 5). In *Hill*, however, the Fifth Circuit rejected the government's argument that a law enforcement officer had reasonable suspicion to conduct a *Terry* stop on individuals in a "high-crime area" at night. 752 F.3d at 1035. The court held that "[n]o reasonable officer who happens upon a couple sitting in a car in an apartment complex parking lot on a weekend night would, without more, suspect criminal activity." *Id.* at 1036. In the instant case, it is unclear from the record whether Stafford was stopped on a weekend night. (*Compare* Compl., Dkt. 1, at 9, *with* Pl. Supp., Dkt. 6, at 1). But in any event, Stafford alleges that "several cars of Black people [were] going the same route they usually take from leaving after the club." (Resp., Dkt. 19, at 2). Taking these allegations as true, it is not unusual that Stafford was at the intersection of MLK and Chicon at 3:00 a.m. Further, Stafford's case is stronger than the case in *Hill* in other respects: Neel has not alleged that Stafford was in a "high-crime area," and Stafford was not idling in a parking lot, but rather pulled up to a red light. (Pl. Supp., Dkt. 6, at 1). Without more, the fact that Stafford pulled up next to a police officer at an intersection at 3:00 a.m. is not enough for a reasonable officer to conclude that criminal activity was afoot as a matter of law.

Second, Neel states that Stafford "acknowledges that the windows in his vehicle were down and that he was in close proximity to Officer Neel at a traffic light." (Mot., Dkt. 18, at 5). Neel does not indicate how these facts are relevant to his suspicion of criminal activity, and it is perfectly legal for an individual to have the windows of a car rolled down while near a police officer. *See Rangel-Portillo*, 586 F.3d at 381 (citing *Chavez-Chavez*, 205 F.3d at 148) ("A factual condition that is consistent with [criminal activity] does not provide reasonable suspicion if that condition also occurs even more frequently in the law-abiding public."). The Court therefore concludes that, as a matter of law, no reasonable officer would have a suspicion of criminal activity from these facts in the circumstances of this case.

Third, Neel mistakes the value of Stafford's video evidence to Neel's position. As already

9

discussed, the video does not show Stafford acknowledging that he was pulled over for loud music. In fact, it does the opposite: Stafford says the words "loud music" in the form of a question, then immediately and passionately disputes that that is the reason why he was pulled over. (*See* Video, Dkt. 18-1, at 9:37). Neel also argues that "the video shows an open container in plain view of the Officer." (Mot., Dkt. 18, at 6). The video, however, begins *after* Neel pulled Stafford over, so it reveals nothing about what was "in plain view" of the officers when they decided to initiate the *Terry* stop. (*See* Video, Dkt. 18-1).

In sum, the Court finds that Stafford has met his burden to plausibly allege that Neel's *Terry* stop violated his Fourth Amendment rights. Stafford alleges that Neel stopped him because he looked at Neel at a red light; the Court must credit this factual allegation as true. The video evidence Stafford has submitted does not reveal any circumstances that would lead a reasonable officer to suspect criminal activity by an individual who had made eye contact with him. Accordingly, Stafford has sufficiently alleged a violation of his constitutional rights.

## 2. Whether the Right Violated Was Clearly Established

Having found that Stafford has sufficiently alleged that Neel violated his Fourth Amendment rights, the Court must now determine whether those rights were clearly established at the time they were violated. *Morgan*, 659 F.3d at 371.

The Court finds that it was clearly established in September 2016 that Neel could not have pulled over Stafford simply because he looked at him at a stop light. The Fifth Circuit had repeatedly held that eye contact with a police officer is not enough to raise a reasonable suspicion of criminal activity, even in combination with other factors. *See Moreno-Chaparro*, 180 F.3d at 632 (5th Cir. 1998); *Chavez-Chavez*, 205 F.3d at 149 (5th Cir. 2000); *United States v. Rangel-Portillo*, 586 F.3d 376, 381 (5th Cir. 2009). The Fifth Circuit has also required much more than the circumstances presented here to elevate the act of looking at a law enforcement officer to the level of reasonable suspicion necessary

to justify a *Terry* stop. In *Rangel-Portillo*, for example, the Fifth Circuit reversed the district court's finding of reasonable suspicion in a case involving a plaintiff who made eye contact with a border patrol agent while driving a Ford Explorer past a Wal-Mart near a known smuggling route. 586 F.3d at 379–80. The district court had relied on the following circumstances: "(1) the proximity of the stop to the border; (2) the fact that Wal-Mart is frequently used as a staging area for alien smuggling and there had been numerous apprehensions of aliens in the area over previous months; (3) the fact that [the officer] observed two vehicles driving in tandem; (4) the fact that the passengers of the Explorer failed to converse with one another and sat rigidly; (5) the absence of shopping bags in the Explorer; (6) the fact that the passengers were sweaty; (7) the fact that the rear passengers wore seat belts; and (8) the fact that the backseat passengers made no eye contact with [the officer], while the driver made repeated eye contact." *Id.* at 379. The Fifth Circuit concluded that these circumstances did not establish a reasonable suspicion of criminal activity. The circumstances alleged here are far less suspicious than these circumstances.

Finally, although not cited by Neel, the Court recognizes that in *Vann v. City of Southaven*, the Fifth Circuit held that "[i]t is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality'" in order to satisfy the clearly-established-law prong of qualified immunity. 884 F.3d 307, 310 (5th Cir. 2018) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 732–33 (5th Cir. 2016)). *Vann* appears to conflict with clear Supreme Court precedent requiring "[a] court engaging in review of a qualified immunity judgment" to "use its full knowledge of its own [and other relevant] precedents." *Elder v. Halloway*, 510 U.S. 510, 516 (1994). In *Elder*, the Court held that "[w]hether an asserted federal right was clearly established at a particular time . . . presents a question of law, not one of 'legal facts.'" *Id.* at 516 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985)). The Court reversed the judgment of the Ninth Circuit below, which had held that plaintiffs are required "to put into the district court record, as 'legal facts,' the cases showing that the right asserted was

11

'clearly established.'" *Id.* (citation omitted). Such a rule, the Supreme Court concluded, rested on a misreading of precedent and did not advance "[t]he central purpose of affording public officials qualified immunity from suit[:] . . . protect[ing] them from undue interference with their duties and from potentially disabling threats of liability." *Id.* at 514 (citation omitted). Rather, "it simply release[d] defendants because of shortages in counsel's or the court's legal research or briefing." *Id.* at 515. This improper result is particularly likely to occur where, as here, a plaintiff is proceeding *pro se*.

*Cass*, moreover—the case on which the Fifth Circuit relies in *Vann*—does not hold that a plaintiff is required to cite specific case law in order to meet his burden. *Cass* merely recognizes that it is the plaintiff's burden to show that a defendant is not entitled to qualified immunity. 814 F.3d at 721. And while *Cass* also recognizes that "defin[ing] clearly established law at a high level of generality" is *insufficient* to make this showing, it does not announce that citation to specific case law is *necessary* to make the showing. *See id.* Indeed, Cass relies on *al-Kidd* for this proposition, and in *al-Kidd*, the Supreme Court held that the clearly-established-law prong required either a "controlling authority" or a "consensus of cases of persuasive authority." *al-Kidd*, 563 U.S. at 742 (citing *Wilson v. Lane*, 526 U.S. 603, 617 (1999). Missing from this statement is any requirement that the plaintiff must direct the court to a particular precedent in order to satisfy his burden.[3]

In any event, even if *Vann* and *Cass* are consistent with *Elder*, the Court finds that they do not apply to *pro se* plaintiffs. Neither *Vann* nor *Cass* involved a *pro se* plaintiff. The Court has located only one subsequent Fifth Circuit case relying on either *Vann* or *Cass* to require a *pro se* plaintiff to cite case law in order to overcome a qualified immunity defense—and that case is an unpublished opinion that also independently found no violation of a constitutional right. *See Valle v. Rogers*, 718 F.

---

[3] *Vann*'s holding is also inconsistent with other Fifth Circuit precedent. In *Delaughter v. Wooddall*, 909 F.3d 130, 140 (5th Cir. 2018), the court found that the clearly-established prong was satisfied by *Mendoza v. Lynaugh*, 989 F.2d 191 (5th Cir. 1993), in combination with three unpublished opinions cited by the plaintiff—even though the plaintiff did not cite *Mendoza* and the court independently located it. *Id.*

12

App'x 309, 310 (5th Cir. 2018). Further, requiring a *pro se* party to cite specific case law undermines a court's obligation to "liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel." *Grant v. Cuellar*, 59 F.3d 524, 524 (5th Cir. 1995); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding pleadings by *pro se* parties to "less stringent standards than formal pleadings drafted by lawyers" and allowing *pro se* petitioners to proceed with their "inartfully pleaded" briefs because they were "sufficient to call for the opportunity to offer supporting evidence"). Interpreting *Vann* and *Cass* to apply to *pro se* plaintiffs would also have the absurd result of requiring those without legal representation, often the most vulnerable members of society, to locate and cite authoritative case law—and not just any case law, but case law "that does not define the law at a high level of generality" (a task any lay person is ill-suited to understand and one with which lawyers themselves frequently struggle)—in order to vindicate the violation of their constitutional rights. And as explained above, requiring a *pro se* plaintiff to introduce cases as "legal facts" to satisfy his burden would not advance the goals of qualified immunity but instead would "simply release[ ] defendants because of shortages in counsel's or the court's legal research or briefing." *Elder*, 510 U.S. at 515.

Accordingly, the Court does not read the case-citing requirement in *Vann* and *Cass* to extend to *pro se* plaintiffs. The Court therefore concludes for the reasons stated in this section that it was clearly established at the time Neel stopped Stafford that the circumstances of this case did not justify the stop. Neel is therefore not entitled to qualified immunity at this stage. Stafford has sufficiently pleaded a violation of his Fourth Amendment rights.

### III. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Neel's Motion to Dismiss, (Dkt. 18), is **DENIED**.

Additionally, the Court is concerned by Defendant counsel's repeated mischaracterization of

the facts and law in this case with respect to the instant motion. Defendant's counsel is warned that further mischaracterizations of the facts and case law may result in sanctions.

    **SIGNED** on June 27, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE